# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| | : | VIOLATIONS: |
| VINCENT ROTONDI | | 18 U.S.C. § 1341 (mail fraud – 4 counts) |
| | : | 18 U.S.C. § 641 (theft of public money – 1 count) |
| | : | Notice of forfeiture |

## INDICTMENT

## COUNTS ONE THROUGH FOUR

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

## INTRODUCTION

1.      On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

2.      On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the PUA (Pandemic Unemployment Assistance) program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

3.      The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the

PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

4.     PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information (PII), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. PA DLI required that the application for PUA benefits as well as the weekly certifications be made online.

5.     While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information, while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide their current employment status and answer if they were able to accept a job if offered. If the applicant was unable to accept a job, the applicant was required to provide a reason for not being able to accept a job.

6.     The applicant was also required to disclose if they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment had been affected by a pandemic or major disaster, the application was

required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7.     In the 'self-certification' section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8.     As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9.     The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant would be able to accept it. An applicant was required to read and understand the PUA Compensation Handbook, which stated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information the applicant could be subject to criminal prosecution.

10.     If PA DLI or another state's administrative agency approved an application

for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant was not able to receive the benefits unless the applicant performed the appropriate weekly certifications.

11.     The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12.     Defendant VINCENT ROTONDI was employed full-time by the City of Philadelphia as a detective in the District Attorney's Office. Defendant ROTONDI also worked part-time as a disc jockey.

## THE SCHEME TO DEFRAUD

13.     From in or about April 30, 2020, to on or about December 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

## VINCENT ROTONDI

devised and intended to devise a scheme to defraud state and federal agencies, and to obtain money and property, specifically PUA benefits, by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

14.     On April 30, 2020, defendant VINCENT ROTONDI submitted a PUA application in the state of Pennsylvania. On the application, defendant ROTONDI indicated that he was working full-time as a police detective and also worked as a gig worker. Defendant ROTONDI falsely stated that he had lost his job due to the COVID-19 pandemic. On the application, defendant ROTONDI also listed the City of Philadelphia as the employer from which he separated due to COVID-19 and indicated the reason for his separation from this employer was Disaster / Pandemic Lack of Work. Defendant ROTONDI also listed that his last day of work was on April 29, 2020. These statements were false as defendant ROTONDI did not lose his job due to the COVID-19 pandemic, was employed on April 29, 2020, and thereafter continued to be employed by the City of Philadelphia for the remainder of 2020.

15.     On May 25, 2020, defendant VINCENT ROTONDI re-opened his claim and submitted a second PUA application in the state of Pennsylvania. On the application,

defendant ROTONDI stated that his current employment status was "Not Working" and that he was unemployed as a direct result of the COVID-19 pandemic. Additionally, on this application defendant ROTONDI removed all the information about his employment with the City of Philadelphia that he had included on his first application. These statements were false due to his continued employment with the City of Philadelphia.

16. Defendant VINCENT ROTONDI also submitted weekly certifications to the PUA website in order to access his benefits. Defendant ROTONDI submitted 42 weekly certifications. 41 of 42 of these weekly certifications covered the workweeks from February 16, 2020, to February 22, 2020, through November 28, 2020, to December 5, 2020. On three of the weekly certifications, defendant ROTONDI certified that he received income as a Mobile DJ. Thus, on the weekly certification for the workweek from February 16, 2020, to February 22, 2020, defendant ROTONDI certified that he made $400 in income as a Mobile DJ that week. On the weekly certification for the workweek from November 1, 2020 to November 7, 2020, defendant ROTONDI certified that he made $1000 in income as a Mobile DJ that week. On the weekly certification for the workweek from November 15, 2020, to November 21, 2020, defendant ROTONDI certified that he made $1000 in income as a Mobile DJ that week. In addition, defendant ROTONDI did not certify any earnings from the City of Philadelphia for these workweeks. These statements on the weekly certifications for these weeks were false as defendant ROTONDI was making income from the City of Philadelphia during these weeks.

17. On the remaining 38 weekly certifications, defendant VINCENT ROTONDI certified that he was not working and did not have any income for each of those weeks. These statements on the weekly certifications for these weeks were false as defendant ROTONDI

6

did not certify any earnings from the City of Philadelphia for these workweeks despite making income from the City of Philadelphia during each of these weeks.

18.     As a result of his applications and weekly certifications, defendant VINCENT ROTONDI obtained $34,344 in PUA benefits.

## THE MAILINGS

19.     On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, having devised and intending to devise the scheme described above, the defendant,

## VINCENT ROTONDI,

for the purpose of executing the scheme above, knowingly caused to be delivered by United States mail or by private or commercial interstate carrier, according to the directions thereon, the following PUA checks, each mailing constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| ONE | 05/27/2020 | A PUA check mailed from Harrisburg, Pennsylvania addressed to VINCENT ROTONDI at N Elmwood Avenue, Langhorne, Pennsylvania. |
| TWO | 06/02/2020 | A PUA check mailed from Harrisburg, Pennsylvania addressed to VINCENT ROTONDI at N Elmwood Avenue, Langhorne, Pennsylvania. |
| THREE | 06/02/2020 | A PUA check mailed from Harrisburg, Pennsylvania addressed to VINCENT ROTONDI at N Elmwood Avenue, Langhorne, Pennsylvania. |
| FOUR | 06/09/2020 | A PUA check mailed from Harrisburg, Pennsylvania addressed to VINCENT ROTONDI at N Elmwood Avenue, Langhorne, Pennsylvania. |

In violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     The allegations in paragraphs 1 through 12 and 14 through 18 of Counts One through Four are incorporated herein.

      2.     From on or about April 30, 2020, to on or about December 21, 2020 in the Eastern District of Pennsylvania, and elsewhere, defendant

**VINCENT ROTONDI**

did knowingly steal and convert to his use and the use of another money and a thing of value of the United States, specifically, Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times relevant to this indictment:

1.      As a result of the violations of Title 18, United States Code, Sections 641 and 1341 as set forth in this indictment, defendant

**VINCENT ROTONDI**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $34,344.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

**A TRUE BILL:**

_Ronald Barrack for_

_____

**JENNIFER ARBITTIER WILLIAMS**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

VINCENT ROTONDI

INDICTMENT

Counts
18 U.S.C. § 1341 (mail fraud – 4 counts) 18 U.S.C. § 641 (theft of public money – 1 count) Notice of
Forfeiture

Filed in open court this _____day,
Of _____A.D. 20_____

Clerk

Bail, $_____